KOLBRENER v. BOB et al.   (No. 7488.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. LANDLORD AND TENANT ⟨⟩165—INJURY TO THIRD PERSON—LIABILITY OF LANDLORD.

A lessee was not liable for injury to a plumber, who had done some work for a tenant and was injured by the negligence of the employés of another tenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630, 631, 633–637, 640, 641; Dec. Dig. ⟨⟩165.]

2. LANDLORD AND TENANT ⟨⟩169—INJURY TO THIRD PERSON—QUESTION FOR JURY—COMPLIANCE WITH BUILDING CODE.

Evidence in an action against a lessee for injury to a third person from a bale falling down the hoistway from the floor of a subtenant, held, that whether the hoistway was constructed and maintained as required by Building Code, §§ 95, 96, was a question for the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 644–646, 664–667, 681–684; Dec. Dig. ⟨⟩169.]

3. LANDLORD AND TENANT ⟨⟩165—INJURY TO TENANT—HOISTWAY—LIABILITY.

Although the Building Code requires that the guards or gates around a hoistway shaft at each floor shall be kept closed when not in use, and that the trapdoors shall be closed at the close of business on each day, no duty devolves upon the lessor to close the trapdoors, or to supervise the work of his tenants in using the hoistway during business hours, and if he properly constructs and maintains the hoistway he is not liable for accidents resulting from its use by his tenants or others.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630, 631, 633–637, 640, 641; Dec. Dig. ⟨⟩165.]

Appeal from Trial Term, New York County.

Action by Peter Kolbrener against Herman D. Bob and another. From a judgment entered upon a verdict in favor of plaintiff, and from an order denying their motion for a new trial, defendants appeal. Judgment and order reversed, and new trial ordered.

See, also, 159 App. Div. 901, 143 N. Y. Supp. 1126.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

F. Wright Moxley, of New York City (James J. Mahoney, of New York City, on the brief), for appellants.

Moses Feltenstein, of New York City (Isadore Apfel, of New York City, on the brief), for respondent.

LAUGHLIN, J. The appellants were lessees for a term of five years of the six upper floors of a loft building known as No. 66 Co-

lumbia street, borough of Manhattan, New York, and they sublet the several lofts to various tenants. On the 4th day of October, 1909, the plaintiff did some plumbing work on the third floor for one of the subtenants. Access to the building was through a door on the ground floor and along that floor under a shaft or hoistway of the dimensions of four by five feet, which extended to the roof and was used by the tenants for hoisting and lowering their goods by means of a rope passing over a pulley at the top of the shaft. Early in the afternoon the plaintiff, after finishing his work, descended the stairs, and while passing out on the ground floor under this hoistway was struck by a bag or bale of goods, consisting of canvas or woolen linings and weighing some 300 or 400 pounds, which fell from the sixth floor. The recovery was for the injuries thus sustained. He had been in and left the building that day shortly before, and had observed the hoistway, and evidently inferred from the suspended rope the use which was made of it, and he took the precaution to observe, before passing under the hoistway, that the rope suspended in the shaft was stationary, and that the hoist apparently was not in use. Three bales of goods, including the one which fell, had just been delivered by express to tenants on the sixth floor. An employé of the tenants, on being notified of the arrival of the goods, lowered a tongs attached to one end of the rope, and the expressman placed the bales of goods on the tongs, one on top of another, and the employé pulled them up and swung them in onto the sixth floor, leaving them, on taking them from the tongs, one on top of another as they came up, within about one foot of the edge of the shaft, and then proceeded to drag them into his employer's shop on that floor. On returning, after thus removing the top bag, he discovered that the middle bag had disappeared. It evidently had rolled off, for it was down at the foot of the shaft.

The action was originally brought against the owner, the tenants whose employé was handling the goods which fell, and the appellants; but the record shows that the other defendants had been "eliminated on plaintiff's motion." A former verdict in favor of plaintiff was set aside by the trial court on the ground that it was excessive and against the weight of the evidence. This court affirmed the order without opinion; but the questions now raised on the defendants' appeal were not then presented and could not be considered.

[1, 2] Manifestly the appellants are not liable for the negligent acts of the employés of their tenants. The only possible theory on which they could be held liable would be for the condition of the premises. The leases to the subtenants are not in evidence; but it is perhaps to be inferred that the appellants furnished the hoistway and hoisting apparatus for the use of all their tenants, inasmuch as each trial of the case has been had on that theory. On the trial now under review it was claimed that the hoistway was not constructed and maintained in accordance with the requirements of sections 95 and 96 of the Building Code. On the part of plaintiff evidence was given tending to show that the hoistway was not constructed in accordance with the provisions of section 95 of the Building Code, in that "it was not in-

closed in walls constructed of brick or other fireproof material and provided with fireproof doors," and that "the openings thereof through and upon each floor" were not "provided with and protected by a substantial guard or gate and with such good and sufficient trapdoors as may be directed and approved by the department of buildings" as required where the hoistway is not so inclosed by brick or other fireproof walls and with fireproof doors; but that evidence was controverted, and thus questions of fact were presented.

[3] The court refused to instruct the jury that if, on their determination of the controverted facts, trapdoors were required, they were not required to be closed until the close of business. That is the only requirement of the Building Code with respect to closing the trapdoors; but it is evident that the attention of the learned trial court was not drawn to that provision, and evidently it was inadvertently overlooked, for the remarks made by the court in declining the request indicate that the court deemed the question as to when the doors should be closed one to be determined exclusively by the test of reasonable care. The Building Code required that the guards or gates around the shaft at each floor should be kept closed when not in use, and by providing in the same connection that the trapdoors should be closed at the close of business on each day manifestly it was recognized that it would not be reasonable to require that they be kept closed when not in use during business hours, for that would require work at all floors before and after using the hoistway for a single haul at one floor. The jury must have understood, from the ground assigned by the court for denying this request, that if trapdoors were required the duty devolved on the appellants not only to furnish them, but to keep them closed if reasonable care required that they should be closed, for the court had already refused to instruct the jury that the duty of closing trapdoors was on the party using them, and said on declining so to charge:

"I leave that entirely to the jury upon the question as to whether or not these defendants were negligent and exercising the degree of care that a reasonably prudent person ought to exercise under the circumstances, and that does not mean, gentlemen, the highest degree of care."

And he further said:

"If you find that the condition of the shaft was not reasonably safe, and that this accident happened because of that condition, you may find the defendants guilty of negligence."

We are of opinion that no duty devolved upon the appellants to close the trapdoors or to supervise the work of their tenants in using the hoistway during business hours. If the appellants properly constructed and maintained the hoistway, they are not liable for accidents resulting from the use thereof by their tenants or others. The refusal of the court to charge as thus requested constitutes prejudicial error and requires a reversal.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellants to abide the event. Order filed. All concur.